UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL # 3:17-cr-00319-01 |
| VERSUS | JUDGE HICKS |
| MATTHEW BEAUDION | MAGISTRATE HAYES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**POST-HEARING MEMORANDUM IN
SUPPORT OF MOTION TO SUPPRESS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MAY IT PLEASE THE COURT:

On August 29, 2018, the hearing was held on the instant Motion To Suppress.  At the hearing, the agent that obtained and executed the warrant admitted several key facts that demonstrate the warrant in this case is constitutionally deficient, the agent could not have been acting in good faith, and as a result, all evidence obtained as a result of its execution must be excluded from evidence.  Further, the testimony of Jessica Davis conclusively proved that her boyfriend, Matthew Beaudion, had an ownership interest in the phone, had every right to answer and use the phone, and had put private digital data in the phone which was nothing short of intimate, including but not limited to his Facebook

username and password and a video of himself engaging in private sexual conduct. Finally, the government alleges that he used the phone, either personally or through Ms. Davis, to conduct at least one drug transaction[1] which also demonstrates an expectation of privacy.

Agent Heckard testified that he had no training in obtaining GPS information and did not research it prior to getting the instant warrant. (Tr. 29) He testified that at the time he got the warrant, he did not know where GPS information was kept. (Tr. 19) Agent Heckard did not have anyone else review the application for the warrant including Agent Cowan of the DEA who was assigned to his taskforce. (Tr. 20 and 44) He stated he had never before executed a warrant that did not state a place to be searched. (Tr. 21) Most damning of all, the agent testified that he was aware that the Fourth Amendment requires the place to be searched in the warrant be described with particularity, yet he failed to include ANY place to be searched in the warrant. (Tr. 20)

The Government has conceded for purposes of this litigation that a search occurred for Fourth Amendment purposes, and therefore, a valid warrant is required. That Amendment is not vague in its requirement that a warrant must particularly describe the place to be searched. The Government correctly states

---

[1] The agent initially testified that he heard Davis tell Beaudion that that the CI wanted to purchase methamphetamine, "[a]nd Matthew told her not to spend money with anybody and to purchase it from him…" (Tr. 6) Later the agent claimed the communication was relayed through Davis. (Tr. 22)

that "[r]easonable specificity" is required, not "elaborate detail." *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012)  The Government notes in its brief that the warrant lists the cell number, the user of the phone and the cell service provider.  Yet none of these is a PLACE, and a casual Google search for Verizon Wireless shows its headquarters is in New York, NY, not New Jersey, where the records were kept.  The warrant in this case has no address, no city, no state, and not even a country where the data sought can be found.  Neither was there a description of a building, a server, a hard drive, or even a URL address or website to be searched.

      Further, the Government's briefings leave out the test in *Triplett* of whether the place searched has been described with enough specificity.  Triplett states, "[t]o avoid fatal generality, the place and items to be seized must 'be described with sufficient particularity so as to leave nothing to the discretion of the officer executing the warrant.'" (Citing *United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010).)  At the hearing, Agent Heckard admitted he was aware of at least one other way that GPS location information for a cell phone could be obtained, to wit: Apple's "Find My iPhone" app. (Tr. 25)  Further, as pointed out by the Government at the hearing, Agent Heckard could have taken the warrant to a local Verizon store to try to get the location information. (Tr. 13)  The agent admitted that calling Verizon was simply the most expedient method, and even then, he

simply called a regular call center and was transferred to another center and he did not know where that was. (Tr. 26 and 35) Clearly, there were other places the agent could have submitted the warrant, but in the agent's discretion, calling the regular Verizon call center was just the most expedient method. Another agent executing the warrant could have, in his discretion, chosen other methods, such as submitting the warrant to a local store, the local 911 call center[2], Apple, Microsoft, or Google.

The government contends that Agent Heckard executed the warrant in good faith and therefore the evidence obtained using the warrant should not be excluded. To the contrary, any reasonably trained officer should be expected to be familiar with the 3 most basic requirements of a warrant: probable cause, the evidence sought, and the place he or she is allowed to search for that evidence. Objectively, no reasonably trained officer could believe a warrant not describing a place to be searched is a valid warrant.

Indeed, Agent Heckard admitted he was aware of the Fourth Amendment's command that the place to be searched must be particularly described, and he admits he did not list the place to be searched in the warrant. (Tr. 20) He admits he did not know where the information he was attempting to get was located when he

---

[2] FCC rules require wireless carriers to provide 911 centers latitude and longitude for devices making 911 calls within a limited margin of error. https://www.fcc.gov/consumers/guides/911-wireless-services

submitted the warrant application to the judge, and he had never executed a warrant before that that did not state a place to be searched. (Tr. 19 and 21)  The Government notes that GPS warrants are routinely used in narcotics investigations and that Agent Heckard had been part of investigations using GPS warrants (or in the Agent's terminology, "ping warrants") in the past. (Government's Post Hearing Brief at p. 5)  However, there has been no showing that those warrants did not describe the place to be searched, and he stated he had never executed a warrant lacking a place to be searched.  Further, even if they had, a routine illegal practice rooted in willful ignorance cannot amount to good faith.[3] The facts before this court show that even SUBJECTIVELY, Agent Heckard was not acting in good faith.

At the hearing, the Government was careful to point out that Matthew Beaudion was not in physical possession of the cellular device that was tracked when the defendants were arrested, and it notes in its Brief that Ms. Davis' parents paid the bill.  For purposes of Fourth Amendment standing analysis, the law is clear that neither ownership nor possessory interest in the place searched is necessary, nor exclusive use or the ability to exclude others. *Mancusi v. DeForte*, 392 U.S. 364, 88 S. Ct. 2120, 20 L. Ed. 2d 1154 (1968)  The Fourth Amendment

---

[3] "…passive good faith will not serve to excuse willful ignorance." *San Antonio & A. P. Ry. Co. v. Sehorn*, 127 S.W. 246, 246, (Tex. App. 1910)

protects people, not places. *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) It is Mr. Beaudoin's reasonable expectation of privacy in the device and in his physical movements that control, not the ownership of the cellular device. For example, in *Mancusi*, the premises searched was an office common to others and owned by the defendant's employer. In *United States v. Jones*, 565 U.S. 400, 414-417, 132 S. Ct. 945, 955-956, 181 L. Ed. 2d 911 (2012), the transmitting device was owned by the investigating agency, not the defendant.

The defendant would concede that the cellular device tracked was used more by Ms. Davis and it was in her physical possession at the time of the stop. However, the evidence is also uncontroverted that Mr. Beaudion was in constructive possession of the phone, he had purchased the phone, and he had used the phone. (Tr. 46) If these facts are not sufficient to establish a privacy interest, we can just look at the things did with the phone. He used the phone to access his Facebook account, entering his username and password. (Id.) He took photos of himself and with his girlfriend. (Tr. 47) He even used the phone to record a video of himself engaged in intimate sexual activity with Ms. Davis. (Id.) Further, Ms. Davis' parents had never physically possessed the phone. (Tr. 48) The Government seems to take the position that only one person can have an expectation of privacy in a thing, but this is clearly incorrect. Clearly, Mr. Beaudion has a subjective expectation of privacy in the phone.

As to whether there is an expectation of privacy in the phone that society is willing to recognize in something that he only uses occasionally, the defendant in *Mancusi* presumably did not occupy his office 24 hours a day every day. The fact that the item in question is a cell phone rather than an office is a distinction without a difference. Today's cellular devices can hold far more "papers and effects" than the drafters of the constitution could have conceived and far more than the office in *Mancusi*.

In addition to Mr. Beaudion's established privacy interest in the device, the defendant would show that he has a legitimate expectation of privacy in his physical location. As stated in *Katz*, the Fourth Amendment protects people not places. In *Carpenter v. United States*, 201 L. Ed. 2d 507, 519, 2018 U.S. LEXIS 3844, 138 S. Ct. 2206 (2018), the Supreme Court held that "[w]hether the Government employs its own surveillance technology as in *Jones* or leverages the technology of a wireless carrier, we hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." The GPS location information in the instant case is no different. It is data sent to a carrier by the cellular device without any action of the device user. The purpose of the rulings in *Carpenter* and *Jones* is clear – protecting the expectation of privacy in one's physical movements. Agent Heckard testified that Mr.

Beaudion was the real target of the investigation, not Ms. Davis. (Tr. 27) The only reason for tracking the phone was to get Mr. Beaudion's location.

In *Carpenter*, the court stated, "[as] technology has enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, this Court has sought to 'assure preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'." (Id. at 2214) It also said, "that a central aim of the Framers was 'to place obstacles in the way of a too permeating police surveillance.'" (Id.) The defendant does not take the position that the government can never learn someone's whereabouts at a given moment. Rather, the government simply needed a valid warrant to do so. Here, investigators used technology in an effort to locate a suspected drug trafficker. If a valid warrant is not required to obtain such information, gone are the days when star crossed lovers could escape detection by sneaking off to a private place. There would be no more anonymity for those visiting a union hall, a political party headquarters, a church, or the local gay bar. The Government's ability to obtain a person's location at any given time, instantaneously and with precision, was impossible when the Fourth Amendment was adopted, and such information was clearly within "the degree of privacy against government that existed when the Fourth Amendment was adopted." (Id.)

Mr. Beaudion would concede that the Stored Communications Act expands the territorial jurisdiction of a state court judge so that he can authorize warrants for searches of places outside of his jurisdiction under his state's law. What the act cannot do is do away with is the Constitution's requirement that the place to be searched must be described with particularity in the warrant. Because, the instant warrant does not give a place to be searched it is not a valid warrant, and because it is so deficient on its face that no reasonably trained officer could rely on it in good faith, the Motion To Suppress must be granted.

Respectfully submitted,

s/ H. Cameron Murray      .
H. Cameron Murray
CAMERON MURRAY
    AND ASSOCIATES
401 Hudson Lane
Monroe, LA 71201
(318) 362-0057
La. Bar Roll #23224

CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing document has been sent to opposing counsel via the Electronic Case Filing system, this 19th day of September, 2018.

s\ H. Cameron Murray      .
H. Cameron Murray