# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NUMBER 17-0319 |
| VERSUS | * | CHIEF JUDGE S. MAURICE HICKS, JR. |
| MATTHEW A. BEAUDION (01) <br> JESSICA N. DAVIS (02) <br> JUSTIN D. JENKINS (03) | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are motions to suppress filed by Defendants Matthew A. Beaudion [doc. # 55] and Jessica N. Davis [doc. # 56]. For reasons explained below, it is recommended that the motions be DENIED.

## Background

In the summer of 2017, Defendants Beaudion and Davis came to the attention of the Metro Narcotics Unit of the Monroe Police Department during its investigation of methamphetamine distribution in the Ouachita Parish area. (Heckard Affidavit ("Aff."), [doc. # 56-1]). On August 15, 2017, a methamphetamine dealer who had been arrested on distribution charges agreed to cooperate with the authorities. *Id.* She informed Detective Kwasic Heckard[1] that Beaudion and Davis were in Houston, TX, purchasing approximately four pounds of methamphetamine. (Hearing Transcript ("Tr.") at 5:6-22, [doc. # 78]). While on speaker phone

---

[1] Detective Kwasic Heckard has been a police officer for the Monroe Police Department for the past nine years. He has been assigned to the Metro Narcotics Unit for four years, during which time he has investigated several cases involving distribution and possession of controlled dangerous substances, in particular marijuana and methamphetamine. (Tr. at 4:12-5:5).

and with Heckard in the room, the dealer called Davis on her cell phone and set up a deal to purchase methamphetamine once Beaudion and Davis returned to Monroe, LA. (*Id.* at 5:25-6:8).

Heckard then applied for a search warrant to obtain GPS coordinates for the phone associated with the number the dealer had been calling. (*Id.* at 8:1-6). The search warrant requested

> GPS coordinates and registered owner information of cell phone number 318-732-0889. This is to include its location from current date and time of August 15, 2017 at 0813 hours to August 16, 2017 at 0000 hours. Cell phone number 318-732-0889 is activated through Verizon Wireless and is currently being used by Jessica Nicole Davis.

(Search Warrant, [doc. # 56-1]). Heckard submitted an oath in support of the search warrant to Judge Larry Jefferson of Louisiana's Fourth Judicial District Court. Judge Jefferson made a finding of probable cause and issued the search warrant, authorizing the search and seizure of the GPS coordinates of cell phone number 318-732-0889. (Search Warrant). Heckard faxed the search warrant to the law enforcement section of Verizon Wireless. (Tr. at 9:2-5). In response, whenever Heckard called Verizon's law enforcement section, Verizon provided the longitude and latitude coordinates and the approximate location of the phone from the last time it was used. (Tr. at 9:9-10:14).

Heckard called for an update six times on August 15. (Tr. at 10:15-18). At approximately 4:00 PM, Heckard learned through the dealer that Davis and Beaudion were leaving Houston and driving back to Monroe. (Tr. at 7:1-5). The last time Heckard called Verizon for location information, Beaudion and Davis were in Shreveport, LA, a ninety-minute drive from Monroe. (*Id.* at 11:8-19). The Metro Narcotics Unit placed agents along the route they believed Defendants would travel, in order to intercept them once they arrived in Ouachita Parish. (*Id.* at

12:6-19).

At approximately 10:43 PM, law enforcement stopped Beaudion's vehicle in Ouachita Parish for a traffic violation. During a search of the vehicle, agents found approximately 690 grams of methamphetamine. [doc. # 59 at 2]. Agents also recovered marijuana, Davis' cell phone, and Beaudion's cell phone. (Tr. at 14:12-16:1).

On December 13, 2017, a federal grand jury returned an indictment against Beaudion, Davis, and another defendant who has since pleaded guilty, for conspiracy to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. [doc. # 1].

On February 12, 2018, Defendants each filed a motion to suppress the evidence obtained as a result of the search of the GPS coordinates of Davis' cell phone. [docs. # 55, 56]. Defendants claim that the warrant issued was void because Judge Jefferson lacked authority to issue a warrant allowing for the search and seizure of information outside his territorial jurisdiction and the warrant failed to describe the place to be searched. [docs. #55-1, 56-2, 69]. The government filed its response on February 27, 2018. [doc. # 59].

In light of a subsequent ruling by the U.S. Supreme Court in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the parties filed supplemental briefs addressing the effects of the decision on the pending motions.[2] [docs. # 67, 68, 69]. The court determined a suppression hearing was

---

[2] In *Carpenter*, the Supreme Court held that the Government's acquisition of historical cell-site records is a search under the Fourth Amendment, for which a warrant supported by probable cause is generally required. 138 S. Ct. 2206, 2220-21 (2018). The parties submitted a pre-hearing joint statement whereby "the United States will not dispute that it conducted a Fourth Amendment search when it obtained latitude/longitude information for Defendant's cell phone from Verizon Wireless located in New Jersey." [docs. # 71, 72, 74]. Because of this stipulation, the narrow holding in *Carpenter* of what constitutes a Fourth Amendment search does not apply in this case.

necessary on the issues of the type of data collected and the means used by the government to obtain the information from Davis' cell phone. [doc. # 70]. The hearing took place on August 29, 2018, with testimony from Heckard, Darryl Cowan,[3] and Davis. The parties submitted pre-hearing statements, [docs. # 71, 72, 74], and post-hearing briefs, [docs. # 79. 80]. This matter is now ripe.

## Standard of Law

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The protections of the Fourth Amendment extend to the states through the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207 (1979).

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citations omitted). Evidence obtained in violation of the Fourth Amendment is generally excluded and "cannot be used in a criminal proceeding against the victim of the illegal search or seizure." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). The purpose of this exclusionary rule is to deter unlawful police conduct: by refusing to admit

---

[3] Darryl Cowan is a Special Agent with the DEA who became involved with the investigation of Beaudion and Davis while Heckard was in the process of obtaining the search warrant. (Tr. at 40:16-41:16). At the hearing, he testified that he has assisted in prior investigations in which state court judges authorized GPS warrants. (*Id.* at 42:18-25). He also testified that he had not consulted with Heckard in regards to drafting the search warrant. (*Id.* at 44:5-16).

evidence gained as a result of conduct that deprives the defendant of some right, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). However, the exclusionary rule is not without limits, and suppression of evidence should be "ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*

## Discussion

### I.  Fourth Amendment Standing

As a threshold matter, this court must address whether Beaudion has standing to contest the search of Davis' cell phone information. The Government contends that Beaudion lacks standing to challenge the search because he has no reasonable expectation of privacy in Davis' cell phone information. [docs. # 59 at 3 n.1, 79 at 2-3]. Beaudion asserts he has the same reasonable expectation of privacy as a cellular device owner has in the confidentiality of cell phone records." [doc. # 55 ¶ III]. Beaudion claims that Davis' testimony at the suppression hearing conclusively proves that he "had an ownership interest in the phone." [doc. # 80 at 1-2]. At the hearing, Davis testified that Beaudion bought the cell phone for Davis and used it to access his Facebook account, take pictures, and record himself engaging in private sexual activity with Davis. (Tr. at 46:11-47:20).

Fourth Amendment rights may not be vicariously asserted. *United States v. Powell*, 732 F.3d 361, 374 (5th Cir. 2013). Therefore, a "defendant seeking to suppress evidence under the Fourth Amendment must demonstrate that his or her individual rights were violated." *Id*. (citing

*Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). While standing does not require an ownership interest, a defendant must prove he "has a legitimate expectation of privacy in the invaded" thing. *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011) (quoting *Rakas*, 439 U.S. at 143).

To establish standing, a defendant must demonstrate (1) "an actual, subjective expectation of privacy with respect to the place being searched or items being seized" and (2) that the expectation of privacy is one that society recognizes as objectively reasonable. *Iraheta*, 764 F.3d at 461 (citations omitted). Relevant factors include "whether the defendant has a possessory interest in the thing seized . . . , whether he has the right to exclude others from [its use], whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, [and] whether he took normal precautions to maintain privacy . . . ." *United States v. Ibarra*, 948 F.2d 903, 906 (5th Cir. 1991).

Although Beaudion paid for, and has permission to use, the cell phone, the phone belongs to Davis. Beaudion may have a small possessory interest in the phone, but he has produced no evidence that he had the ability to exclude others from using the phone or that he took precautions to maintain his privacy in the phone. Overall, Beaudion has not demonstrated that he has a reasonable expectation of privacy in Davis' cell phone, and thus, lacks standing to challenge the search of the cell phone information.

Accordingly, IT IS RECOMMENDED that Defendant Beaudion's Motion to Suppress [doc. # 55] be DENIED.

**II.     Warrant Requirement**

Davis claims that "the search and seizure of the GPS coordinates" of her cell phone violated her Fourth Amendment rights. [doc. # 56]. She argues that the search warrant allowing

6

for the search and seizure of her cell phone information is invalid because the location of the search was outside Judge Jefferson's jurisdiction. [doc. # 56-2 at 2-3]. Davis argues that the warrant was issued in one of two places, both of which are outside the jurisdiction of the Fourth Judicial District Court: (1) New Jersey, the Verizon Wireless location where Heckard faxed the search warrant; or (2) Houston, TX, the location of Davis' phone at the time Heckard sought and obtained the warrant. [docs. # 56-2 at 2, 71 at 2]. Davis submits that the warrant was void ab initio and cannot be saved by the good faith exception. [doc. # 56-2 at 3]. She also argues that the warrant lacks the particularity required under the Fourth Amendment because it does not contain an explanation of what is being searched. (*Id.* at 5). Specifically, the warrant does not clearly indicate what should be searched in order to obtain the phone's GPS coordinates: the cell phone, a cell tower, or Verizon's data records. (*Id.*) Therefore, the evidence derived from the search warrant must be excluded in criminal proceedings against Davis.

The Government responds that the "warrant clearly outlines the phone number account to be searched, the current user, and the cell phone provider" to satisfy the particularity requirement. [doc. # 59 at 6]. Further, the warrant specifies what is being searched—"GPS coordinates and registered information." (*Id.*) The Government also contends that even if the warrant is invalid, the "officers had a good-faith basis to rely on it, and the evidence obtained from Verizon should not be suppressed." (*Id.* at 8).[4]

A. Jurisdiction

---

[4] In their briefings, the parties also address whether the search was permissible under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq*. However, Heckard testified that he had not previously heard of the SCA and was not trying to use the SCA to obtain the search warrant. (Dep. at 19:19-20:1). Therefore, the SCA does not apply in these circumstances, and the court declines to address these arguments.

"[W]hen a state officer secures a search warrant from a state judge" state law controls in "determining whether the search warrant was issued by an appropriate court even when the seized evidence is offered in federal court." *United States v. Conine*, 33 F.3d 467, 469 (5th Cir. 1994). Louisiana law provides the requirements for issuance of a search warrant: "a judge may issue a warrant authorizing the search for and seizure of any thing within the territorial jurisdiction of the court"; "[a] judge may also issue a search warrant in all other cases specifically provided by law." La. Code Crim. Proc. art. 161(A), (C). "A search conducted outside of the jurisdiction of the issuing court violates the Louisiana Code of Criminal Procedure." *United States v. Thompson*, No. CR 14-153, 2016 WL 3476714, at *9 (E.D. La. June 27, 2016). A search in violation of Article 161 is a violation of a procedural rule but is not necessarily an unconstitutional search. *State v. Matthieu*, 506 So. 2d 1209, 1212 (La. 1987); *see United States v. Walker*, 960 F.2d 409, 415-16 (5th Cir. 1992) (finding that the Fourth Amendment does not require suppression of evidence that results from a search and seizure that is illegal under state law).

The undersigned is not persuaded that the evidence here was obtained as a result of an unconstitutional search. At the time Heckard obtained the search warrant, he knew Verizon had "several" physical stores in the Ouachita Parish area and was unaware that the Verizon location providing the GPS information was located in New Jersey. (Tr. at 12:24-3, 13:25-14:8). Heckard testified that he served the warrant by fax after calling a 1-800 number and being directed to Verizon's law enforcement section, and he did not know to which Verizon location he was submitting the warrant. (Tr. at 9:2-14, 13:14-21). Additionally, although Heckard knew that Davis was in Houston at the time he obtained the search warrant, he also knew that she would be driving back to Monroe the same day and that her residence is in Monroe. (Tr. at 6:22-7:5, 12:13-

16). Given that Davis resides in Monroe and Verizon has stores in Ouachita Parish, it is not clear whether Judge Jefferson lacked the jurisdiction to issue the warrant. However, the court need not make this determination; assuming, *arguendo*, that the court lacked jurisdiction to issue the warrant, the evidence demonstrates that the search violated a Louisiana procedural rule, but not the Fourth Amendment.

      B.  Particularity

"The Fourth Amendment's particularity requirement demands that the place to be searched and the items to be seized be described with sufficient particularity so as to leave 'nothing . . . to the discretion of the officer executing the warrant.'" *United States v. Allen*, 625 F.3d 830, 834-35 (5th Cir. 2010) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)); *see United States v. Hill*, 19 F.3d 984, 987 (5th Cir. 1994) ("The warrant must be sufficiently definite so that the officer executing it can identify the property sought with reasonable certainty." (quotations omitted)). "In identifying the property to be seized, the agents are required to interpret the warrant, but are not obliged to interpret it narrowly." *Hill*, 19 F.3d at 987 (quotations omitted). "Stated differently, the particularity requirement requires the search warrant to describe the property to be seized with reasonable specificity, but not with elaborate detail." *Id.* The warrant itself must meet the particularity requirement, not the supporting documents. *Evans v. Davis*, 875 F.3d 210, 219 (5th Cir. 2017). A search pursuant to a warrant that does not satisfy the particularity requirement constitutes a "warrantless" search. *Id.*

      Upon review of the search warrant, the undersigned finds that the warrant satisfies the particularity requirement. Despite Davis' argument, the warrant specifies what is to be searched and seized—"GPS coordinates of cell phone number 318-732-0889," including the phone's

current location as of the date of the warrant—and provides the cell phone's current user and provider. (Search Warrant). The warrant includes all of the necessary terms to describe the property, so that an executing officer would be able to identify what is to be searched and seized.

    C. <u>Good-Faith Exception</u>

Even if the warrant was not valid, a warrantless search is justifiable if it falls "under one of the specifically established and well-delineated exceptions to the general warrant requirements," such as the good-faith exception. *Thompson*, 2016 WL 3476714 at *9.

When an officer obtains evidence in an "objectively reasonable good-faith reliance" on a search warrant, the exclusionary rule's "deterrence rationale loses much of its force," and the evidence is admissible. *Pope*, 467 F.3d at 916. "For the good-faith exception to apply, the executing-officer's reliance on the issuing-judge's probable-cause determination and the technical sufficiency of the warrant must have been objectively reasonable." *United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005). The reviewing court should

> uphold an officer's good faith reliance on that warrant, unless: (1) the issuing-judge 'was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth'; (2) the issuing-judge 'wholly abandoned his judicial role' in such a manner that 'no reasonably well trained officer should rely on the warrant'; (3) the underlying affidavit is 'bare bones' ('so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'); or (4) the warrant is 'so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.'

*Id.* (quoting *Leon*, 468 U.S. at 923).

None of these conditions apply here. Davis does not contend that the judge wholly abandoned his judicial role in issuing the warrant or that the warrant was facially deficient. Additionally, there is no indication that Heckard provided false information in his affidavit.

Testimony at the hearing supports Heckard's affidavit that he had probable cause to believe that Defendants were purchasing methamphetamine and transporting it to the Ouachita Parish area for sale. Although Heckard knew the cell phone was in Houston when he drafted the warrant, he also knew Defendants were driving back to Monroe that day, and he was planning to use the GPS coordinates to stop them once they reached Ouachita Parish. (Tr. at 12:13-19). Finally, the affidavit is not "bare bones," but contains sufficient facts to support a finding of probable cause. The evidence demonstrates that Heckard had an objectively reasonable good-faith basis to rely on the warrant. Thus, suppression is not warranted.[5]

Accordingly, IT IS RECOMMENDED that Defendant Davis' Motion to Suppress [doc. # 56] be DENIED.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant Beaudion's Motions to Suppress [doc. # 55] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant Davis' Motion to Suppress [doc. # 56] be **DENIED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

---

[5] Davis argues that the good-faith exception does not apply in this case because the warrant is void ab initio, as opposed to merely voidable. [doc. # 56-2 at 3-4]. To support her argument, she cites *United States v. Levin*, a case which was vacated and remanded on appeal. 186 F. Supp. 3d 26 (D. Mass. 2016), *vacated and remanded*, 874 F.3d 316 (1st Cir. 2017). On appeal, the court found that the good-faith exception could apply regardless of whether the warrant was void ab initio. *Levin*, 874 F.3d at 321.

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 23rd day of October, 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE